IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| ANGELA R. GILDER-LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:04cv825-T |
| | ) | (WO) |
| ELMORE COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Angela R. Gilder-Lucas brought this lawsuit
against defendants Superintendent Bruce Fulmer, Assistant
Superintendent Carol McGalliard, Assistant Superintendent
James Myer, Principal Louie Fryer, Karen Naquin, and the
Elmore County School Board.[1]  Gilder-Lucas asserts
violations of the First and Fourteenth Amendments of the
United States Constitution, as enforced by 42 U.S.C.A.
§ 1983. Additionally, she asserts various state-law

---

1.  Gilder-Lucas names the Elmore County Board of
Education and the Elmore County School Board as
defendants.  However, these two entities are synonymous
and are referred to as the Elmore County School Board.

violations.   Jurisdiction is proper under 28 U.S.C.A. § 1331 (federal claims) and § 1367 (state claims).   The court concludes that, first, summary judgment should be granted on Gilder-Lucas's federal claims and, second, her state-law claims should be dismissed with leave to refile in state court.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);   see also Fitzpatrick v. City

of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

What follows is Gilder-Lucas's version of the facts in this case. Gilder-Lucas began working as a science

teacher at Stanhope Elmore High School in January 2003. In February 2004, she became the junior varsity cheerleading sponsor. Naquin was the varsity sponsor. From approximately March 12 to March 18, 2004, a tryout clinic was held. The following day, the final cheerleading tryouts took place.

Subsequently, two parents complained about the tryouts. On two or more occasions, Gilder-Lucas met with one or more of the parents, Principal Fryer, Naquin, and the school guidance counselor about the cheerleading selection process.

After the meetings, Fryer gave Gilder-Lucas and the guidance counselor a questionnaire with the following six questions:

> "(1) Did Mrs. Naquin do or say anything that would lend credence to [parent] Woody's allegation that she is biased or that she cannot be trusted?
>
> "(2) Is there any evidence that Judge #1 could not be trusted to score the candidates fairly?

"(3) Is there any evidence that the selection process was biased in any way?

"(4) Should Mr. Woody's daughter be placed on the Junior Varsity Cheerleading squad for the 2004/2005 school year? Explain your answer.

"(5) Have you had any conversations with any of the candidates' parents since the try-outs? If your answer is yes, please provide a description of that conversation– no matter how trivial.

"(6) Were you aware of the selection process and any requirements as to the racial make-up of the squad?  If your answer is no, please explain."[2]

On April 19, 2004, Gilder-Lucas responded indicating that she witnessed improprieties in the process.[3] Specifically, she alleged that Naquin tampered with the cheerleader selection process by adding tumbling and gymnastics elements to the evaluation and by contacting the judges during the tryouts.  She cast Naquin's actions

_____

2.  Plaintiff's response and objection to defendants' motion for summary judgment (Doc. No. 23), Exhibit 4, memorandum from Fryer.

3.  <u>Id</u>., Exhibit 5, Gilder-Lucas's response to Fryer's memorandum.

5

as inconsistent with the National Federation of Cheerleaders Guidelines.[4]

On May 10, 2004, Fryer responded to one of the parent's complaint stating that all the cheerleading sponsors, including Gilder-Lucas, reported no irregularities in the tryouts that would have compromised the final results.[5]

Around May 11, Fryer informed Gilder-Lucas that he heard she was moving out of the state. Gilder-Lucas replied that she had applied for a position in an out-of-state school, but she had not received an acceptance letter. Fryer told her to keep him informed so that he could make preparations for a replacement if necessary.

On May 12, Fryer told Gilder-Lucas that he was not renewing her contract. He told her he would accept a letter of resignation. Gilder-Lucas declined to resign. On or about May 18, she received a termination- of-

---

4. <u>Id</u>.

5. <u>Id</u>., Exhibit 10, Fryer's response to Woody.

6

contract notice.

Subsequently, the Montgomery Advertiser published an article quoting Superintendent Fulmer as saying, generally, that all decisions not to renew teachers were based on nonperformance.[6]


## III. DISCUSSION

### A. Federal Claims

Gilder-Lucas alleges two constitutional deprivations: (1) retaliatory discharge for exercising First Amendment protected speech and (2) termination in contravention of Fourteenth Amendment Due Process.  The court will address each allegation in turn.


### 1. First Amendment

The First Amendment protects public employees from being discharged or from being denied contract renewal in retaliation for exercising their First Amendment rights.

---

6.  Defendants' motion for summary judgment (Doc. No. 19), Exhibit 28, Montgomery Advertiser Article.

Rankin v. McPherson, 483 U.S. 378, 383 (1987); Perry v. Sindermann, 408 U.S. 593, 597 (1972); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  To establish a claim of First Amendment retaliation, Gilder-Lucas must show that: (1) her speech addressed a matter of public concern; (2) her First Amendment interest in engaging in the speech outweighed her employer's interest in promoting the efficiency of the public service it performs through its employees; and (3) her speech motivated her dismissal. See Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001).  If Gilder-Lucas satisfies this burden, the defendants may still prevail if they prove "by a preponderance of the evidence that [they] would have reached the same decision in the absence of the protected conduct."  Id.

Gilder-Lucas cannot establish a First Amendment violation because her response to Fryer's memorandum did not address issues of public concern.  A public employee's speech involves a matter of public concern if

8

it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).  In making this determination, the court must be mindful of the "content, form, and context" of the speech. Rankin, 483 U.S. at 384-5; Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989).

The content of Gilder-Lucas's response addressees the internal management of the school cheerleading tryouts. The Eleventh Circuit has repeatedly differentiated between speech concerning the internal administration of public education such as personal grievances of public school employees that are matters of private concern, and speech that directly affects the public's perception of the quality of education in a specific school system, which is meant to be protected by the First Amendment. See, e.g., Williams v. Alabama State Univ., 102 F.3d 1179, 1183 (11th Cir. 1997); Maples v. Martin, 858 F.2d 1546, 1552-1553 (11th Cir. 1988).  In differentiating

between these two types of speech, the court must not allow public employees to "transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986).

Here, Gilder-Lucas's speech does not pertain in anyway to the educational quality of the school. It merely criticizes the procedures and criterion utilized by the coaches and judges in selecting members for the cheerleading squad. The selection methods used may well be personally important to the aggrieved parties, but they are not of inherent import to the greater public not involved in this extracurricular activity. Thus, her response to Principal Fryer's memorandum falls within the ambit of an internal or personal grievance.

Further, the context in which Gilder-Lucas produced her response to the memorandum supports its non-public designation. A critical element in analyzing the proper designation of a public employee's speech is "whether the

10

speech at issue was made primarily in the employee's role as a citizen, or primarily in the role of employee." Morris v. Crow, 142 F.3d 1379, 1382 (11th Cir. 1998) (quoting Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993)(citations omitted), *cert. denied*, 512 U.S. 1221 (1994)).  Here, Principal Fryer required Gilder-Lucas's written response to a parent's complaints and she followed this command, addressing her speech to Fryer alone.  She made no effort to communicate her speech to the public.  While speech already determined to discuss a matter of public concern does not lose its public character solely because it is privately expressed, a failure to make the public aware of a grievance can undermine its public nature. Connick, 461 U.S. at 148 n.8; see also Kurtz v. Vickrey, 855 F.2d 723, 729 (11th Cir. 1988) (stating that "Kurtz's profession of public concern loses force when it is considered that he took no affirmative steps ... to inform the public at large

11

about, the problems with which he was so gravely concerned").

Thus, because there is nothing inherent in the content of Gilder-Lucas's speech that would implicate a public concern and because of her choice to limit the speech to the school principal, her response to Principal Fryer's memorandum is rightly considered speech made primarily in her role as an employee that does not trigger First Amendment protection.

## 2. Due Process

The due process clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  The due process clause provides two different kinds of constitutional protection: substantive and procedural.  <u>McKinney v. Pate</u>, 20 F.3d 1550, 1555 (11th Cir. 1995)  Gilder-Lucas asserts that the denial her right to free speech

constituted a substantive-due-process violation. However, Gilder-Lucas cannot properly use a free-speech violation as the basis of a substantive-due-process claim because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).  Accordingly, any alleged First Amendment violation must be brought under the more specifically delineated First Amendment provision, and the court has already found that Gilder-Lucas's First Amendment rights were not violated.

However, Gilder-Lucas has a procedural-due-process claim if she can show the deprivation of a property or liberty interest.  To establish a valid property interest, she must show "an individual entitlement

13

grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982); see also Warren v. Crawford, 927 F.2d 559, 561-62 (11th Cir. 1991). Such an entitlement may be supported by a "mutually explicit understanding" with the employer. Perry, 408 U.S. at 601. However, a unilateral expectation of continued employment does not suffice. Bishop v. Wood, 426 U.S. 341, 345-47 (1976); Sullivan v. Sch. Bd. of Pinella County, 773 F.2d 1182, 1185 (11th Cir. 1985). Under Alabama law, "a nontenured teacher has no right, statutory or otherwise, to be re-employed." Foster v. Blout County Bd. of Educ., 340 So.2d 751, 752 (Ala. 1976). Because it is undisputed that Gilder-Lucas was a nontenured teacher, Gilder-Lucas's procedural-due-process claim as to her alleged property interest must fail.

Gilder-Lucas can establish a protected liberty interest if stigmatizing charges were made as part of her nonrenewal of employment. See, e.g., Dennis v. S & S

14

<u>Consol. Rural High Sch. Dist.</u>, 577 F.2d 338, 342-3 (5th Cir. 1978).[7] Gilder-Lucas must satisfy the following six-factor test to make that showing: (1) a false statement (2) of a stigmatizing nature (3) attending a government employee's discharge (4) was made public (5) by the governmental employer (6) without a meaningful opportunity for an employee name- clearing hearing. <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1330 (11th Cir. 2000). Further, Gilder-Lucas must demonstrate that the defendant "refuse[d] to provide a process sufficient to remedy the procedural deprivation" in order to establish a constitutional violation. <u>Id</u>. at 1330-1331 (quoting <u>McKinney</u>, 20 F.3d at 1557).

First, there must be a factual dispute about the truth of the statement publicized in the Montgomery Advertiser that several non-tenured teachers were not

_____

7.   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handled down prior to the close of business on September 30, 1981."

renewed based on nonperformance. <u>Buxton v. City of Plant City, Florida</u>, 871 F.2d 1037, 1042 n. 4 (11th Cir. 1989) (citing <u>Codd v. Velger</u>, 429 U.S. 624, 627 (1977)).  The evidence presents such a dispute.  Fryer alleges that he recommended Gilder-Lucas's nonrenewal based on her classroom performance and failure to turn in some lesson plans in a timely manner.[8]  Gilder-Lucas provides evaluations from April and May 2003 rating her performance as satisfactory in some areas and needing improvement in others,[9] as well evaluations from November 2003, and January, March, and April 2004, rating her as either satisfactory or excellent.[10]

Second, the nonperformance statement must be stigmatizing.  Stigmatizing statements are those "where a person's good name, reputation, honor, or integrity is

---

8.  Plaintiff's response and objection to defendants' motion for summary judgment (Doc. No. 23), Exhibit 1, Deposition of Fryer, p. 57.

9.  <u>Id</u>., Exhibit 8, Evaluations of Gilder-Lucas, pp. 1-12.

10.  <u>Id</u>. at pp. 12-36.

at stake because of what the government is doing." Wisconsin v. Constantinueau, 400 U.S. 433, 437 (1971). However, not all negative statements rise to the level of stigmatization required to establish a due-process claim. Rather, stigmatizing statements are limited to those that would have imposed "a stigma or other disability that foreclosed [Gilder-Lucas's] freedom to take advantage of other employment opportunities." Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972).  The Eleventh Circuit has yet to decide whether a charge of incompetence implicates a protected liberty interest.  Clemons v. Doughtery County, 684 F.2d 1365, 1373 (11th Cir. 1982).

However, this court finds guidance in the vast majority of circuits finding that charges of incompetence do not meet the requirements articulated in Roth.  See, e.g., Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002) (finding that "[s]tatements merely indicating that employee's improper or inadequate performance, incompetence, or neglect of duty are not

17

sufficiently serious to trigger the liberty interest protected by the Constitution"); Roberston v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982) (stating that incompetence is not "the type of communication which gives rise to a protected liberty interest"); Ludwig v. Bd. of Trs., 123 F.3d 404, 410 (6th Cir. 1997) (finding that "a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance"); Munson v. Friske, 754 F.2d 683, 693 (7th Cir. 1985) (finding that "[l]iberty is not infringed by a label of incompetence"); Norbeck v. Davenport Cmty Sch. Dist., 545 F.2d 63, 69 (8th Cir. 1976) (finding that remarks indicating that an employee's "conduct failed to meet professional standards...does not infringe upon a liberty interest"); Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 366 (9th Cir. 1976) (finding that "[l]iberty is not infringed by a label of incompetence"); Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d

18

1384, 1396-97 (10th Cir. 1988) (citing the Seventh and Ninth Circuit cases to find the same).  Additionally, the Second Circuit has held that charges relating to professional competence are stigmatizing if they are sufficiently serious as to damage professional reputation to an extent that severely impedes future employability in the field.  <u>Patterson v. City of Utica</u>, 370 F.3d 322, 330 (2d Cir. 2004).

Applying the authorities cited above to the facts here, this court finds that Gilder-Lucas has failed to establish that charging her with nonperformance seriously damaged her standing and associations in the community or foreclosed her ability to take advantage of other employment opportunities.  The courts reaching this issue have uniformly found that charges of incompetence are not inherently stigmatizing.  Further, Gilder-Lucas has provided no evidence regarding the effect of this statement on her reputation or subsequent employment.  As such, this court is unable to conclude that the statement

19

significantly impaired her in these regards.  Further, the newspaper article publishing this statement did not even specifically mention Gilder-Lucas, but instead generally addressed the school board's decision not to ask several unnamed teachers to return the following school year.  Accordingly, this court finds that Gilder-Lucas's due process claim alleging a liberty deprivation is meritless.

## B. State-Law Claims

8 U.S.C.A. § 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if ... the district court has dismissed all claims over which it has original jurisdiction." Because summary judgment is due to be granted on Gilder-Lucas's federal claims, the court declines to exercise supplemental jurisdiction over her state-law claims. Accordingly, these claims will be dismissed, albeit without prejudice. See United Mine Workers of America v.

Gibbs, 383 U.S. 715, 726-727 (1966); L.S.T., Inc. v.
Crow, 49 F.3d 679, 685 (11th Cir. 1995).  The court's
dismissal of these state-law claims should not work to
Gilder-Lucas's disadvantage.[11]

For the foregoing reasons, the court concludes that
summary judgment is due to be granted on Gilder-Lucas's
federal claims and that her state-law claims are due to
be dismissed without prejudice.

An appropriate judgment will be entered.

DONE, this the 26th day of October, 2005.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE

---

11. Section 1367(d) provides for at least a 30-day
tolling of any applicable statute of limitations so as to
allow plaintiffs to refile their claims in state court.
The section states:

"The period of limitations  for any claim
asserted under subsection (a), and for any other
claim in the same action that is voluntarily
dismissed at the same time as or after the
dismissal of the claim under subsection (a),
shall be tolled while the claim is pending and
for a period of 30 days after it is dismissed
unless State law provides for a longer tolling
period."